IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Swadener Investment Properties, LLC | ) | Case No. 11-10322-M |
| | ) | Chapter 11 |
| | ) | |
| | ) | The Honorable Terrence L. Michael |
| | ) | |
| Debtor-In-Possession. | ) | |

**PLAN OF REORGANIZATION FOR SWADENER INVESTMENT PROPERTIES, LLC**

Scott P. Kirtley
RIGGS, ABNEY, NEAL,
TURPEN, ORBISON & LEWIS
502 West 6th Street
Tulsa, Oklahoma  74119-1010
(918) 587-3161

Dated: August 15, 2011                Attorneys for Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Swadener Investment Properties, LLC | ) | Case No. 11-10322-M |
| | ) | Chapter 11 |
| | ) | |
| | ) | The Honorable Terrence L. Michael |
| | ) | |
| Debtor-In-Possession. | ) | |

## PLAN OF REORGANIZATION FOR SWADENER INVESTMENT PROPERTIES, LLC

The Debtor-In-Possession, Swadener Investment Properties, LLC (the "Debtor"), proposes the following Plan of Reorganization (the "Plan") under Chapter 11 of the Bankruptcy Code.

ARTICLE I
SUMMARY

This Plan proposes to pay the Debtor's creditors from the rental income and cash flow of the Debtor's operation of four (4) commercial office buildings and a commercial retail sales center.

This Plan provides for one class of priority unsecured claims, 10 classes of secured claims, two classes of general unsecured claims, and one class of the equity interest holders. Administrative claims will receive a distribution of 100% of their allowed claims on the Effective Date of the Plan or as soon as that claim is allowed. The Effective Date is the date in which the Order confirming this Plan becomes a final and non-appealable Order. Priority unsecured claims will receive distribution of 100% of their allowed claims within 60 days of the Effective Date. General unsecured claims in the amount of $3,000.00 or less will receive a distribution of 100% of their allowed claims within 60 days of the Effective Date as an administrative convenience. All other general unsecured creditors will receive a distribution of 100% of their allowed claims by equal monthly payments over 120 months after the Effective Date. Secured creditors will receive distributions of interest and principal beginning 30 days after the Effective Date. The equity interest holders shall retain their interest in the Debtor after the Effective Date.

All creditors and the equity interest holders should review this Plan for information regarding the precise treatment of their claim or interest. A Disclosure Statement that provides more detailed information regarding this Plan and the rights of creditors and the equity interest

holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult with one.**

## ARTICLE II
## EXECUTION AND IMPLEMENTATION OF THE PLAN

2.1   <u>The Debtor.</u>

On the Effective Date, all assets of the Debtor's estate shall vest in the Debtor free and clear of all liens, claims, encumbrances and interests, but subject to the rights of holders of allowed claims to obtain distributions provided in the Plan. The Debtor shall administer its business and property from and after the Effective Date.

The Debtor shall be responsible: (a) for making the distributions in accordance with the Plan; and (b) for its business and financial affairs from and after the Effective Date.

From and after the Effective Date, the Debtor may retain such personnel or professionals as it deems appropriate, and compensate such professionals without prior approval of the Bankruptcy Court. However, all parties seeking payment or reimbursement of attorney's, accountant's or other professional's fees incurred from and after the filing of this case on February 18, 2011 (the "Petition Date") through the Effective Date, must obtain approval of the Bankruptcy Court for such payment pursuant to a motion or application for such payment filed not later than 30 days after the Effective Date.

2.2   <u>Preservation of Rights of Action.</u>

Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, the Debtor shall remain with the Debtor who shall have the right to enforce any claims, rights and causes of action, including, but not limited to Bankruptcy Code Sections 329, 510, and 544 through 550 inclusive. The Debtor may, in its sole discretion, pursue or refrain from pursuing those rights or causes of action, as appropriate, in accordance with what is in the best interests of the Debtor.

2.3   <u>Objections to Claims.</u>

Objections to claims, including administrative expense claims, shall be filed with the Bankruptcy Court and served upon the holder of such prior to the Effective Date. The Debtor shall have standing to file and prosecute such objections. No distribution will be made on account of a disputed claim unless the claim is allowed. The Debtor will hold sufficient funds in reserve for distribution to holders of claims to which an objection has been filed.

3

2.4     Distribution of Property Under the Plan.

The Debtor shall make, or cause to be made, all distributions under the Plan.  The Debtor shall have the authority to make interim distributions as it may determine to be appropriate pending a final distribution.

2.5     Delivery of Distributions.

Distributions to holders of allowed claims shall be distributed by mail as follows: (a) at the addresses set forth on the respective proofs of claim filed by such claimant; (b) at the addresses set forth in any written notices of address changes delivered to the Debtor after the date of any related proof of claim; or (c) if no proof of claim is filed, then at the address reflected in the Debtor's Schedules of Assets and Liabilities.

2.7     Employee Claims and Compensation and Benefit Programs.

The Debtor has a 401(k) plan for its employees.  The Debtor's unpaid contribution on behalf of its employees will be made within 60 days after the Effective Date as set forth in Article V.  The Debtor shall continue its 401(k) plan with employees after the Effective Date.

ARTICLE III
CLASSIFICATION OF CLAIMS AND INTERESTS

For purposes of satisfying the Debtor's obligations, the claims and interest of the creditors and interest holder are divided into the following classes:

Class No. 1     Priority Claims for Contribution to Employee Benefit Plan [11 U.S.C. Section 507(a)(5)]

Class No. 2     Secured Claim of Valley National Bank concerning its mortgage on Remington Tower [11 U.S.C. Section 506(a)]

Class No. 3     Secured Claim of NBC Bank concerning its first mortgage on 2800 Center [11 U.S.C. Section 506(a)]

Class No. 4     Secured Claim of NBC Bank concerning its second mortgage on 2800 Center [11 U.S.C. Section 506(a)]

Class No. 5     Secured Claim of Valley National Bank concerning its first mortgage on 2700 & 2600 Centers [11 U.S.C. Section 506(a)]

Class No. 6     Secured Claim of Regent Bank concerning its second mortgage on 2700 & 2600 Centers [11 U.S.C. Section 506(a)]

4

Class No. 7     NBC Bank concerning its first mortgage on Northeast Plaza [11 U.S.C. Section 506(a)]

Class No. 8     Secured Claim of Ray Bagwell concerning his second mortgage on Northeast Plaza [11 U.S.C. Section 506(a)]

Class No. 9     Secured Claim of Tulsa County Treasurer on its statutory lien on 2800 Center, 2700 Center, & 2600 Center [11 U.S.C. Section 506(a)]

Class No. 10    Secured Claim of NBC Bank concerning its lien on a 2006 Honda CRV [11 U.S.C. Section 506(a)]

Class No. 11    Convenience Unsecured Claims (those unsecured claims less than $3,000.00) [11 U.S.C. Section 1122(b)]

Class No. 12    Unsecured Claims (those unsecured claims more than $3,000.00) [11 U.S.C. Section 502)]

Class No. 13    Equity Interests of Mark W. Swadener (99%) and Dru Graham (1%).

ARTICLE IV
TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND U.S. TRUSTEE FEES

Pursuant to 11 U.S.C. Section 1123(a)(1), administrative expense claims are not placed in classes.

4.1     Each holder of an administrative expense claim allowed under 11 U.S.C. Section 503 will be paid in full on the Effective Date or on the date on which the holder of an administrative claim is allowed.

- Oklahoma Energy Services, Inc. holds an administrative expense claim pursuant to 11 U.S.C. Section 503(b)(9) in the amount of $3,188.77.

- Riggs Abney, Neal, Turpen, Orbison & Lewis holds an administrative expense claim pursuant to 11 U.S.C. Section 503(b)(2) in the estimated amount of $30,000.00.

The Debtor is not aware of any other administrative expense claims.

4.2     All fees required to be paid by 28 U.S.C. Section 1930(a)(6) ('U.S. Trustee Fees") will accrue and be timely paid until the case is closed, dismissed, or converted to another Chapter of the Bankruptcy Code.  Any U.S. Trustee Fee owed on or before the Effective Date will be paid on the Effective Date.

5

ARTICLE V
TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

Claims and the equity interest holders shall be treated as follows under this Plan.

All of the commercial properties are listed for sale and shall be marketed for sale after the Effective Date.  In the event, a property is sold, proceeds from the sale of the property shall be distributed as follows:

First, to the actual and necessary costs of sale.
Second, to the secured claims relating to the property sold.
Third, to the remaining unpaid unsecured claims.
Fourth, to the Debtor.

5.1      Class 1.          Priority Claims

| Claimaint | Amount | Insider | Impairment | Treatment |
|---|---|---|---|---|
| Priority Claim for Contribution to Employee Benefit Plan<br><br>**Becky Vallely** | $161.53 | No | Yes | Paid in 2 equal installments with the 1st payment 30 days after the Effective Date and the 2nd payment 60 days after the Effective Date |
| Priority Claim for Contribution to Employee Benefit Plan<br><br>**Dru Graham** | $3,000.00 | Yes | Yes | Paid in 2 equal installments with the 1st payment 30 days after the Effective Date and the 2nd payment 60 days after the Effective Date |
| Priority Claim for Contribution to Employee Benefit Plan<br><br>**Glen Stout** | $1,614.17 | No | Yes | Paid in 2 equal installments with the 1st payment 30 days after the Effective Date and the 2nd payment 60 days after the Effective Date |
| Priority Claim for Contribution to Employee Benefit Plan<br><br>**Glenda Foster** | $646.50 | No | Yes | Paid in 2 equal installments with the 1st payment 30 days after the Effective Date and the 2nd payment 60 days after the Effective Date |

| | | | | |
|---|---|---|---|---|
| Priority Claim for Contribution to Employee Benefit Plan<br><br>**Kevin Cline** | $1,122.28 | No | Yes | Paid in 2 equal installments with the 1st payment 30 days after the Effective Date and the 2nd payment 60 days after the Effective Date |
| Priority Claim for Contribution to Employee Benefit Plan<br><br>**Melissa Nash** | $905.68 | No | Yes | Paid in 2 equal installments with the 1st payment 30 days after the Effective Date and the 2nd payment 60 days after the Effective Date |
| Priority Claim for Contribution to Employee Benefit Plan<br><br>**Nikole Dickenson** | $303.78 | No | Yes | Paid in 2 equal installments with the 1st payment 30 days after the Effective Date and the 2nd payment 60 days after the Effective Date |

5.2    Class 2.    <u>Secured Claim of Valley National Bank concerning its mortgage on Remington Tower</u>

| Claimant | Amount | Insider | Impairment |
|---|---|---|---|
| Secured Claim of Valley National Bank<br><br>Remington Tower | $4,592,191.33 | No | Yes |

Valley National Bank has a recorded mortgage concerning the Debtor's leasehold interest on the following described property:

> **Lot 1, Block 1 Witt Center, City of Tulsa, Tulsa County, Oklahoma according to the recorded plat thereof a/k/a Remington Tower, 5810 E. Skelly Drive, Tulsa, Oklahoma 74135**

The Debtor's promissory notes, loan documents, and mortgages are attached to the proof of claim filed by Valley National Bank on April 22, 2011.

Pursuant to the Order allowing Debtor to incur debt entered on August 16, 2011, Valley National Bank loaned the Debtor $225,740.23 to pay the ad valorem taxes owed to the Tulsa County Treasurer concerning Remington Tower.

The allowed secured claim of Valley National Bank is $4,592,191.33 (which includes the loan of $225,740.23 incurred after the Petition Date). Distributions to Valley National Bank

shall be made beginning 30 days after the Effective Date as follows:

Months 1-14    Payments of interest only at 2.2% in the amount of $8,419.02.

The principal amount owed shall become due on the 15th month after the Effective Date. Assuming the Debtor shows some improvements in cash flow, the Debtor has agreed to negotiate in good faith with Valley National Bank to refinance this loan based upon Remington Tower's performance and rent structure at that time.

Valley National Bank shall retain its liens on all of its collateral. The mortgages and financing statements, if any, filed by Valley National Bank to perfect its security interests in its collateral shall remain in place, and Valley National Bank is not required to re-file mortgages and financing statements, if any, pursuant to this Plan. The notes and loan documents made, executed and delivered by the Debtor to Valley National Bank shall remain in place except as modified by this Plan; however, the default provisions of Insolvency, Events Affecting Guarantor, and Insecurity are removed from the notes, mortgages, and loan documents pursuant to this Plan.

5.3    Class 3.    Secured Claim of NBC Bank concerning its first mortgage on 2800
       Center

| Claimant | Amount | Insider | Impairment |
|----------|--------|---------|------------|
| Secured Claim of NBC Bank  2800 Center | $1,354,106.38 | No | Yes |

NBC Bank has a mortgage dated March 28, 2006 and recorded April 3, 2006 in the offices of the Tulsa County Clerk on the Debtor's following described property:

**Lot 1 less E20 Block 1 Weir Addition resub Part L 13-18, Block 9, Villa Grove Addition an addition to the City of Tulsa, Tulsa County, Oklahoma according to the recorded plat thereof a/k/a 2800 Center, 2800 E. Skelly Drive, Tulsa, Oklahoma 74105**

The Debtor's promissory notes, loan documents, and mortgages are attached to the proof of claim filed by NBC on June 7, 2011.

The amount of the secured claim of NBC Bank is $1,289,824.91 relating to its note and mortgage concerning the 2800 Center. Under the Plan, NBC Bank will pay the ad valorem taxes owed to the Tulsa County Treasurer in the amount of $64,281.47 that relate to the 2800 Center within 30 days of the Effective Date. The allowed secured claim of NBC Bank including its post Effective Date advance is $1,354,106.38. Distributions to NBC Bank shall be made beginning 30 days after the Effective Date as follows:

Months 1-14   Payments of interest only at 3.25% in the amount of $3,667.37.

The principal amount owed shall become due on the 15th month after the Effective Date. Assuming the Debtor shows some improvements in cash flow, the Debtor has agreed to negotiate in good faith with NBC Bank to refinance this loan based upon 2800 Center's performance and rent structure at that time.

NBC Bank shall retain its liens on all of its collateral. The mortgages and financing statements, if any, filed by NBC Bank to perfect its security interests in its collateral shall remain in place, and NBC Bank is not required to re-file mortgages and financing statements, if any, pursuant to this Plan. The notes and loan documents made, executed and delivered by the Debtor to NBC Bank shall remain in place except as modified by this Plan; however, the default provisions of Insolvency, Events Affecting Guarantor, and Insecurity are removed from the notes, mortgages, and loan documents pursuant to this Plan.

5.4   Class 4.   Secured Claim of NBC Bank concerning its second mortgage on 2800 Center

| Claimant | Amount | Insider | Impairment |
|---|---|---|---|
| Secured Claim of NBC Bank<br><br>2800 Center | $36,410.99 | No | Yes |

NBC Bank has a modification of mortgage dated September 10, 2009 and recorded October 20, 2009 in the offices of the Tulsa County Clerk on the Debtor's following described property:

**Lot 1 less E20 Block 1 Weir Addition resub Part L 13-18, Block 9, Villa Grove Addition an addition to the City of Tulsa, Tulsa County, Oklahoma according to the recorded plat thereof a/k/a 2800 Center, 2800 E. Skelly Drive, Tulsa, Oklahoma 74105**

The Debtor's promissory notes, loan documents, and mortgages are attached to the proof of claim filed by NBC on June 7, 2011.

The amount of the allowed secured claim of NBC Bank is $36,410.99 relating to its note and mortgage concerning the 2800 Center. Distributions to NBC Bank shall be made beginning 30 days after the Effective Date as follows:

Months 1-14   Payments of interest only at 3.25% in the amount of $98.61.

The principal amount owed shall become due on the 15th month after the Effective Date. Assuming the Debtor shows some improvements in cash flow, the Debtor has agreed to negotiate

9

in good faith with NBC Bank to refinance this loan based upon 2800 Center's performance and rent structure at that time.

NBC Bank shall retain its liens on all of its collateral. The mortgages and financing statements, if any, filed by NBC Bank to perfect its security interests in its collateral shall remain in place, and NBC Bank is not required to re-file mortgages and financing statements, if any, pursuant to this Plan. The notes and loan documents made, executed and delivered by the Debtor to NBC Bank shall remain in place except as modified by this Plan; however, the default provisions of Insolvency, Events Affecting Guarantor, and Insecurity are removed from the notes, mortgages, and loan documents pursuant to this Plan.

    4.5    Class 5.    <u>Secured Claim of Valley National Bank concerning its first mortgage on 2700 & 2600 Centers</u>

| Claimant | Amount | Insider | Impairment |
|---|---|---|---|
| Secured Claim of Valley National Bank  2700 & 2600 Centers | $1,917,102.49 | No | Yes |

Valley National Bank has a recorded mortgage concerning the Debtor's leasehold interest on the following described property:

**Lot 1, Block 1 and Lot 1, Block 2 Weir Second Addition and Resub Part L 11-12, Block 3 L9-10, Block 4 Villa Grove Addition to the City of Tulsa, Tulsa County, Oklahoma according to the recorded plat thereof a/k/a 2600 & 2700 Centers 2600 & 2761 E. Skelly Drive, Tulsa, Oklahoma 74105**

The Debtor's promissory notes, loan documents, and mortgages are attached to the proof of claim filed by Valley National Bank on April 22, 2011.

The allowed secured claim of Valley National Bank is $1,917,102.49. Distributions to Valley National Bank shall be made beginning 30 days after the Effective Date as follows:

Months 1-14   Payments of interest only at 2.2% in the amount of $3,514.69.

The principal amount owed shall become due on the 15th month after the Effective Date. Assuming the Debtor shows some improvements in cash flow, the Debtor has agreed to negotiate in good faith with Valley National Bank to refinance this loan based upon 2700 & 2600 Centers' performance and rent structure at that time.

Valley National Bank shall retain its liens on all of its collateral. The mortgages and financing statements, if any, filed by Valley National Bank to perfect its security interests in its collateral shall remain in place, and Valley National Bank is not required to re-file mortgages and financing statements, if any, pursuant to this Plan. The notes and loan documents made,

executed and delivered by the Debtor to Valley National Bank shall remain in place except as modified by this Plan; however, the default provisions of Insolvency, Events Affecting Guarantor, and Insecurity are removed from the notes, mortgages, and loan documents pursuant to this Plan.

    5.6    Class 6.    <u>Secured Claim of Regent Bank concerning its second mortgage on 2700 & 2600 Centers</u>

| Claimant | Amount | Insider | Impairment |
|---|---|---|---|
| Secured Claim of Regent Bank 2700 & 2600 Centers | $135,779.00 | No | Yes |

Regent Bank has a mortgage dated September 21, 2009 recorded in the offices of the Tulsa County Clerk concerning the Debtor's leasehold interest on the following described property:

**Lot 1, Block 1 and Lot 1, Block 2 Weir Second Addition and Resub Part L 11-12, Block 3 L9-10, Block 4 Villa Grove Addition to the City of Tulsa, Tulsa County, Oklahoma according to the recorded plat thereof a/k/a 2600 & 2700 Centers 2600 & 2761 E. Skelly Drive, Tulsa, Oklahoma 74105**

The allowed secured claim of Regent Bank is $135,779.00. Distributions to Regent Bank shall be made beginning 30 days after the Effective Date as follows:

Months 1-60   Payments of principal and interest at 3.25% amortized over 240 months in the amount of $770.13.

The remaining principal amount owed shall become due on the 61st month after the Effective Date.

Regent Bank shall retain its liens on all of its collateral. The mortgages and financing statements, if any, filed by Regent Bank to perfect its security interests in its collateral shall remain in place, and Regent Bank is not required to re-file mortgages and financing statements, if any, pursuant to this Plan. The notes and loan documents made, executed and delivered by the Debtor to Regent Bank shall remain in place except as modified by this Plan; however, the default provisions of Insolvency, Events Affecting Guarantor, and Insecurity are removed from the notes, mortgages, and loan documents pursuant to this Plan.

5.7   Class 7.   Secured Claim of NBC Bank concerning its first mortgage on Northeast Plaza

| Claimant | Amount | Insider | Impairment |
|---|---|---|---|
| Secured Claim of NBC Bank  Northeast Plaza | $2,867,775.81 | No | Yes |

NBC Bank has a mortgage dated December 1, 2006 and recorded December 5, 2006 in the offices of the Tulsa County Clerk on the Debtor's following described property:

**A part of the East Half of the Northeast Quarter (E/2 NE/4) of Section Seven (7), Township Nineteen (19) North, Range Fourteen (14) East of the Indian Base and Meridian, Tulsa County, State of Oklahoma, according to the US Government Survey thereof a/k/a Northeast Plaza, 116-1150 E. Garnett Road, Tulsa, Oklahoma 74112**

The Debtor's promissory notes, loan documents, and mortgages (including the complete legal description) are attached to the proof of claim filed by NBC on June 7, 2011.

The amount of the secured claim of NBC Bank is $2,616,893.25 relating to its note and mortgage concerning the Northeast Plaza. Under the Plan, NBC Bank will pay the ad valorem taxes owed to the Tulsa County Treasurer in the amount of $250,882.56 that relate to the Northeast Plaza within 30 days of the Effective Date. The allowed secured claim of NBC Bank including its post Effective Date advance is $2,867,775.81. Distributions to NBC Bank shall be made beginning 30 days after the Effective Date as follows:

Months 1-14   Payments of interest only at 3.25% in the amount of $7,766.89.

The principal amount owed shall become due on the 15th month after the Effective Date. Assuming the Debtor shows some improvements in cash flow, the Debtor has agreed to negotiate in good faith with NBC Bank to refinance this loan based upon Northeast Plaza's performance and rent structure at that time.

NBC Bank shall retain its liens on all of its collateral. The mortgages and financing statements, if any, filed by NBC Bank to perfect its security interests in its collateral shall remain in place, and NBC Bank is not required to re-file mortgages and financing statements, if any, pursuant to this Plan. The notes and loan documents made, executed and delivered by the Debtor to NBC Bank shall remain in place except as modified by this Plan; however, the default provisions of Insolvency, Events Affecting Guarantor, and Insecurity are removed from the notes, mortgages, and loan documents pursuant to this Plan.

5.8     Class 8.          Secured Claim of Ray Bagwell concerning his second mortgage on
        Northeast Plaza

| Claimant | Amount | Insider | Impairment |
|---|---|---|---|
| Secured Claim of Ray Bagwell<br><br>Northeast Plaza | $605,337.23 | No | Yes |

Ray Bagwell has a mortgage dated December 1, 2006 and recorded December 5, 2006 in the offices of the Tulsa County Clerk concerning the Debtor's following described property:

**A part of the East Half of the Northeast Quarter (E/2 NE/4) of Section Seven (7), Township Nineteen (19) North, Range Fourteen (14) East of the Indian Base and Meridian, Tulsa County, State of Oklahoma, according to the US Government Survey thereof
a/k/a Northeast Plaza, 116-1150 E. Garnett Road, Tulsa, Oklahoma 74112**

The Debtor's promissory notes, loan documents, and mortgages (including the complete legal description) are attached to the proof of claim filed by Ray Bagwell on June 14, 2011.

The allowed secured claim of Ray Bagwell is $605,337.23.  Distributions to Ray Bagwell shall be made beginning 30 days after the Effective Date as follows:

Months 1-12   Payments of interest only at 3.25% in the amount of $1,639.45.
Months 13-24  Payments of interest only at 4.25% in the amount of $2,143.90.
Months 25-60  Payments of principal and interest at 5.5% amortized over 240 months in the amount of $4,164.04.

The remaining principal amount owed shall become due on the 61st month after the Effective Date.

Ray Bagwell shall retain its liens on all of his collateral.  The mortgage filed by Ray Bagwell to perfect his mortgage shall remain in place, and Ray Bagwell is not required to re-file his mortgage pursuant to this Plan.  The note and mortgage made, executed and delivered by the Debtor to Ray Bagwell shall remain in place except as modified by this Plan; however, the default provisions of Insolvency, Events Affecting Guarantor, and Insecurity are removed from the note and mortgage pursuant to this Plan.

5.9     Class 9.     Secured Claim of Tulsa County Treasurer on its statutory lien on 2800 Center, 2700 Center, & 2600 Center

| Claimant | Amount | Insider | Impairment |
|---|---|---|---|
| Secured Claim of Tulsa County Treasurer | | No | Yes |
| 2800 Center | $64,281.47 | | |
| 2700 & 2600 Centers | $68,794.43 | | |
| Northeast Plaza | $250,882.56 | | |

The Tulsa County Treasurer has statutory liens encumbering the 2800 Center, 2700 Center, and 2600 Center.

Under the Plan, NBC Bank will advance funds to the Debtor so that the ad valorem taxes owed to the Tulsa County Treasurer will be paid concerning the 2800 Center in the amount of $64,281.47; and Northeast Plaza in the amount of $250,882.56 within 30 days of the Effective Date.

The remaining allowed secured claim of the Tulsa County Treasurer concerning the 2700 & 2600 Centers in the amount of $68,794.43 shall be distributed within 30 days of the Effective Date from the funds (approximately $179,000) held with the Tulsa County Court.

5.10    Class 10.    Secured Claim of NBC Bank concerning its lien on a 2006 Honda CRV

| Claimant | Amount | Insider | Impairment |
|---|---|---|---|
| Secured Claim of NBC Bank | $3,540.20 | No | No |
| 2006 Honda CRV | | | |

NBC Bank has a lien entry form entered on September 23, 2006 with the Motor Vehicle Department of the Oklahoma Tax Commission perfecting its security interests in the following property:

**2006 Honda CRV**

NBC Bank's promissory note, security agreement, and lien entry form is attached to the proof of claim filed by NBC Bank on June 7, 2011.

A distribution of $3,540.20 shall be made 30 days after the Effective Date.

NBC Bank shall release its lien encumbering the 2006 Honda CRV upon receipt of payment by the Debtor.

    5.11    Class 11.    <u>Convenience Unsecured Claims (those unsecured claims less than $3,000.00)</u>

The following claims totaling less than $3,000.00 has been classified separately for administrative convenience pursuant to 11 U.S.C. Section 1122(b) as follows:

| Claimant | Amount | Insider | Impairment |
|---|---|---|---|
| Able Fire Systems | $3,000.00 | No | Yes |
| Home Depot CC | $2,807.51 | No | Yes |
| Palmer Supply | $2,698.81 | No | Yes |
| Associated Parts | $1,866.41 | No | Yes |
| Comm. Metals Co. | $1,535.63 | No | Yes |
| McIntosh, Inc. | $1,529.94 | No | Yes |
| Dell Preferred CC | $1,517.07 | No | Yes |
| Johnstone Supply | $1,296.85 | No | Yes |
| Pitney Bowes | $1,226.13 | No | Yes |
| Air Expert | $1,030.00 | No | Yes |
| Best Elect. Hardware | $1,009.65 | No | Yes |
| Locke Supply | $980.62 | No | Yes |
| Certified Labs | $956.28 | No | Yes |
| Tropical Plant Design | $886.22 | No | Yes |
| Wright Express Fin. | $874.04 | No | Yes |
| Lowe's (GE Money) | $777.62 | No | Yes |
| NAIOP | $644.00 | No | Yes |
| Serv. & Equip. Intl. | $611.48 | No | Yes |
| Dyer Glass | $600.00 | No | Yes |
| A&D Supply | $543.80 | No | Yes |
| IRS | $477.77 | No | Yes |
| Scents Plus | $469.00 | No | Yes |
| BESCO | $466.08 | No | Yes |
| Am. Leak Detection | $375.00 | No | Yes |
| Fleetmaster | $366.39 | No | Yes |
| Fergueson Enterprises | $183.97 | No | Yes |
| Cintas Corp. | $166.94 | No | Yes |
| SMAC Comm. | $160.00 | No | Yes |
| Audiomatrix | $105.00 | No | Yes |
| Kelly Moore Paint | $65.71 | No | Yes |

A distribution of one-half (1/2) of the allowed claim amount shall be made 30 days after the Effective Date, and a distribution of one-half (1/2) of the allowed amount shall be made 60

days after the Effective Date.

5.12   Class 12.   <u>Unsecured Claims (those unsecured claims more than $3,000.00)</u>

The following claims, totaling more than $3,000.00, represent the general unsecured claims of the Debtor:

| Claimant | Amount | Insider | Impairment |
|---|---|---|---|
| Dru Graham | $180,480.72 | Yes | Yes |
| Ed Behnken | $110,000.00 | No | Yes |
| Triad Bank | $0.00 | No | Yes |
| Lighting, Inc. | $46,913.95 | No | Yes |
| Quest Elevator | 40,384.80 | No | Yes |
| Mark W. Swadener | $0.00 | Yes | Yes |
| Graham Commercial | $29,936.64 | No | Yes |
| Redlee, SCS | $27,695.81 | No | Yes |
| Hall Estill | $26,880.00 | No | Yes |
| Cowan Landscape | $13,252.40 | No | Yes |
| Bank of America CC | $12,338.22 | No | Yes |
| Source One Janitorial | $10,984.98 | No | Yes |
| AEP | $7,103.73 | No | Yes |
| American Express | $5,016.56 | No | Yes |
| Ikon Fin. Services | $4,341.12 | No | Yes |

The allowed general unsecured claim shall be paid in 120 equal monthly installments beginning 30 days after the Effective Date.

5.13   Class 13.   <u>Equity Interest</u>

Mark W. Swadener owns 99% and Dru Graham owns 1% of the Debtor.  They shall retain their interests in the Debtor.

This class is deemed not impaired.

ARTICLE VI
<u>PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

All executory contracts and unexpired leases have been assumed by prior Bankruptcy Court order.  No executory contracts or unexpired leases were rejected during the pendency of the case.

To the extent there are other executory contracts or unexpired leases, those executory contracts and unexpired leases shall be deemed rejected by the Debtor unless: (a) expressly assumed by the Debtor with Bankruptcy Court approval on or before the Effective Date; or (b)

subject to a motion to assume pending on the Effective Date.

The other party to an executory contract or unexpired lease that has been rejected may file a proof of claim with respect to the claim for damages by reason of the rejection. Any proof of claim with respect to claims under a rejected executory contract or unexpired lease must be filed within 30 days after the Effective Date. A claim resulting from rejection of an executory contract or unexpired lease shall constitute a Class 11 claim to the extent it is allowed by the Bankruptcy Court.

ARTICLE VII
MEANS FOR IMPLEMENTATION OF THE PLAN

The source of payments under the Plan will be funded by the cash flow generated from the rents paid to the Debtor by the tenants of its commercial office buildings and retail center.

Mark W. Swadener will continue to manage the Debtor, and his annual salary will be $50,000. In addition, to managing the properties, Mark W. Swadener also acts as leasing agent so that commissions are only limited and payable to the extent of necessary outside brokerage services. Dru Graham will continue to perform her duties as chief financial officer, and her annual salary is $78,897.00.

Except as otherwise provided in the Plan, on the Effective Date all assets of the Debtor shall vest in the Debtor free and clear of all liens, claims, encumbrances and Interests, but subject to the rights of holders of allowed claims to obtain distributions provided in the Plan. The Debtor shall administer its business and property from and after the Effective Date.

The Debtor will be responsible: (a) for making the distributions in accordance with the Plan; and (b) for its business and financial affairs from and after the Effective Date. The Debtor shall have the authority to make interim distributions as it may determine to be appropriate pending a final distribution. The Debtor shall hold sufficient funds in reserve for distribution to holders of claims to which an objection has been filed.

From and after the Effective Date, the Debtor may retain such personnel or professionals (including, without limitation, legal counsel, financial advisors or other agents) as it deems appropriate, and compensate such professionals without prior approval of the Bankruptcy Court. However, all parties seeking payment of reimbursement of attorneys', accountant, or other professionals' fees incurred from and after the Petition Date through the Effective Date, pursuant to any provision of the Bankruptcy Code or the Plan, must obtain approval of the Bankruptcy Court for such payment pursuant to a motion or application for such payment filed not later than 30 days after the Effective Date.

ARTICLE VIII
ACCEPTANCE OF PLAN:  EFFECT OF REJECTION

Each impaired class of creditors with allowed claims against the Debtor shall be entitled to vote separately to accept or reject the Plan.

A class of creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the allowed claims of such class that have voted to accept or reject the Plan.

In the event any impaired class of creditors with claims against the Debtor shall fail to accept the Plan in accordance with Section 1129(a) of the Bankruptcy Code, the Debtor shall request that the Bankruptcy Court confirm the Plan in accordance with 11 U.S.C. Section 1129(b).

ARTICLE IX
DISCHARGE

The entry of the Order confirming the Plan creates a discharge effective as of the Effective Date, of any and all liens, encumbrances and debts that arose at any time before the Effective Date, including, but not limited to, all principal and interest, whether accrued before or after the Petition Date, pursuant to 11 U. S. C. Sections 1141(d)(1) and 506(d).  The discharge of the Debtor shall be effective as to each claim, regardless of whether a proof of claim was filed, whether the claim is an allowed claim, or whether the holder thereof votes to accept the Plan.

The distribution shall be in exchange for and in complete satisfaction, discharge and release of all claims that creditors may have against the Debtor or any of its assets, and any such creditor shall be precluded from asserting against the Debtor or any of its assets any other or further claims based on any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

ARTICLE X
GENERAL PROVISIONS

10.1    Amendments to Legal Documents:  Upon entry of the Order confirming this Plan, legal documents are amended in accordance with the terms set forth in Article V.

10.2    Cancellation of Notes and Instruments.

On the Effective Date, the respective rights and obligations of the Debtor and each holder of a Claim existing as of the Effective Date shall be terminated and canceled except to the extent of a right to receive a distribution under the Plan.  Because of the binding effect of confirmation of the Plan as described above, no new documents shall be required to be executed pursuant to

the Plan except any which are specially called for by the Plan or by the claimant. Rather, the provisions of the Plan itself shall have legal effect. However, if the Debtor is agreeable, any legal documents, the terms of which have become confusing because of the binding effect of the Plan may be amended to conform with the provisions of the Plan. Any such amendment shall specifically refer to the provision of the Plan allowing such amendment in conformity with the Plan. In the event of any conflict in interpretation of such newly executed documents, the provisions of the Plan shall control. Any further modification of the rights of any party following confirmation of the Plan and which are inconsistent with the provisions of the Plan shall specifically indicate that such modification is made with fair and consideration and shall recite such consideration, otherwise, the Debtor shall not be bound by such modification.

Notwithstanding anything contained here, the Debtor shall have the right to request the Court to disallow any claim of any entity from which property is recoverable under 11 U.S.C. Sections 542, 543, 550 or 553, or that is a transferee of a transfer avoidance under 11 U.S.C. Sections 544, 545, 548 or 549 unless such entity or transferee is liable.

So long as the Debtor pursues reasonable efforts to consummate the Plan, consummation may be delayed upon agreement of all holders of secured claims and written notice to the entities affected hereby.

10.3    Compliance with Tax Requirements: The Debtor will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

10.4    Grace Period: All payments due to be paid after the Effective Date on a monthly basis shall be past due 10 days after their due date. If the payment of any sums, or the performance of any act, is scheduled to occur on a Saturday, Sunday or holiday on which national banks are closed for business, the payment or performance shall be timely if made or performed on the next preceding day.

10.5    Retention and Enforcement of Claims, Causes of Action and Avoidance Powers: This Plan provides that all claims, rights, avoidance powers, rights to object to claims, and all other legal or equitable rights, claims or actions which the Debtor claims, brought or conceivably could have brought in its capacity as Debtor, including without limitation, avoidance and other actions contemplated in Chapter 5 of the Bankruptcy Code, shall be retained and may be maintained, enforced and/or prosecuted by the Debtor after the confirmation of the Plan, and the Court will retain jurisdiction to hear and resolve all such matters. The Debtor shall be deemed to be the duly appointed "representative" of the estate, as contemplated by 11 U.S.C. Section 1123(b)(3)(B).

10.6    Notices: All notices required to be made to the Debtor in accordance with the Plan shall be in writing and mailed to Scott P. Kirtley, 502 W. 6th Street, Tulsa, Oklahoma 74119.

10.7    Estimation of Claims:  To the extent necessary to obtain Confirmation of this Plan, the Debtor moves the Court, pursuant to 11 U.S.C. Sections 502(c) and 506(a) to estimate and/or value any disputed claims or classes whose claims require estimation and/or valuation in order to obtain confirmation of the Plan, and to make appropriate provisions in the Order confirming the Plan regarding such estimations and/or valuations.

10.8    Injunctions:  Without in any way limiting the effect of 11 U.S.C Sections 524 or 1124, unless otherwise provided in the Plan, all injunctions or stays provided for in this case pursuant to 11 U.S.C. Sections 105 and 362 or otherwise in effect on the date in this the Plan is confirmed shall remain in full force and effect until the Effective Date and unless otherwise provided shall expire on the Effective Date.

10.9    Setoffs.

The Debtor may, but shall not be required to, set off against any allowed claim, claims of any nature that the Debtor may have against the holder of such allowed claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any claim against the Debtor shall constitute a waiver or release by the Debtor of any claim that the Debtor may possess against such holder.

10.10    Lien Releases.

Upon receipt of the sums provided for in this Plan to satisfy their respective secured claims, holders of secured claims shall be obliged to provide releases of all liens, mortgages, and security interests held or claimed by them against the Debtor's property.

10.11    Limitation of Liability.

None of the Debtor, its employees, officers, directors, agents, or representatives, or any professionals employed by it, shall have or incur any liability to any person or entity for any act taken or omission made in good faith in connection with or related to formulating, implementing, confirming, or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan.

10.12    Final Decree

Once the estate has been fully administered, as provided in Fed.R.Bankr.P. 3022, the Debtor shall file a motion with the Court to obtain a final decree to close the case.  Alternatively, the Court may enter such a final decree on its own motion.

ARTICLE XI
JURISDICTION OF THE COURT

The Bankruptcy Court shall retain general jurisdiction of this case until the closing of this

case, for at least the following purposes:

11.1     The classification of claims of any creditors, the re-examination of claims which have been estimated for purposes of voting, and the determination of such objections as may be filed to creditors' claims.  The estimation or failure by the Debtor to object to or to examine any claim for the purpose of voting, shall not be deemed to be a waiver of the Debtor's right to object to, or re-examine the claim in whole or in part as to the allowability for payment.

11.2     The determination of any rejection, assumption or assumption and assignment of any executory contract or unexpired lease, to hear and determine, and, if need be, to liquidate any and all claims arising therefrom, and to adjudicate any other issues.

11.3     The determination of applications, adversary proceedings and contested matters that may be pending within 30 days of the Effective Date.

11.4     The determination of all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any other party, including, but not limited to, any right of the Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code.

11.5     The correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan or the Order confirming the Plan as may be necessary to carry out the purposes and intent of this Plan.

11.6     The modification of this Plan after confirmation pursuant to the Bankruptcy Rules and Title 11 of the United States Code.

11.7     The enforcement and interpretation of the terms and conditions of this Plan.

11.8     The entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor  made under the Bankruptcy Code and under this Plan, and the imposition of such limitations, restrictions, terms and conditions of such title, rights and powers as this Bankruptcy Court may deem necessary.

11.9     The entry of an order concluding and terminating this case.

11.10   The determination of applications for allowances of compensation and reimbursement of expense and reasonableness of any fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan.

11.11   The Bankruptcy Court shall retain jurisdiction of all parties until the Plan has been fully implemented and the case is closed.

ARTICLE XII
MODIFICATION OF THE PLAN

This Plan may be amended or modified by the Debtor at any time prior to the confirmation of the Plan upon such notice as the Court may require. After the entry of the order confirming the Plan, the Debtor may also seek to modify the Plan at any time only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing.

Dated this 15th day of August, 2011.

RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS

Scott P. Kirtley   OBA #11388
502 W. 6th Street
Tulsa, Oklahoma 74119
(918) 587-3161
(918) 587-9708 (fax)

Attorneys for Swadener Investment Properties, LLC